PARKIN v. LOCOMOBILE CO. OF AMERICA.

(District Court, E. D. Pennsylvania.   September 21, 1915.)

1. PATENTS ⚙═➤328—VALIDITY AND INFRINGEMENT—CARBURETER.
   The Parkin patents, Nos. 968,597 and 1,082,762, for an improved carbureter, which cover a combination having as elements auxiliary air intake valves regulated by two springs coming into use to automaticlly meet the requirements of low speed and high speed, and at the same time independently adjustable to meet the needs of special conditions, discloses a novel combination and patentable invention; also *held* infringed.

2. PATENTS ⚙═➤45—VALIDITY—EVIDENCE OF WANT OF NOVELTY.
   To invalidate a patent on the ground of lack of inventive novelty, in that the claimed invention was before known to and used by others, requires clear and convincing proof.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 51–53; Dec. Dig. ⚙═➤45.]

In Equity.   Suit by Joseph W. Parkin against the Locomobile Company of America.   On final hearing.   Decree for complainant.

Synnestvedt, Bradley, Lechner & Fowkes, of Philadelphia, Pa., for plaintiff.

Emery, Booth, Janney & Varney, of Boston, Mass., for defendant.

DICKINSON, District Judge.   The averments of the bill, so far as pertinent to the trial issues raised, are of the grant of letters patent to plaintiff, bearing the respective dates and numbers of August 20, 1910, No. 968,597, and December 30, 1913, No. 1,082,762, and infringement thereof by defendant.   The infringement is virtually conceded, if the letters patent have validity.

[1] The patents are for an improved carbureter.   The claims of the patentee include, as an element in his invention, the use of auxiliary air intake valves regulated by two springs successively coming into use to automatically meet the requirements of low speed and high speed, and at the same time independently adjustable to meet the needs of special conditions.   The main defense to this feature of the claim is based upon the averment of the fact of long prior use of this element of independent adjustability and its abandonment in favor of springs simultaneously adjustable.   In consequence the incorporation by the patentee of this element in his invention was, whether he knew it or not, a renaissance, and his right of proprietorship therein is denied.   The second patent is for a refinement of the invention of the first, and relates particularly to the method of adjusting the springs. There is an admisson of the use of the invention by defendant during the years 1911 and 1912, but a denial of its use since.   The defense is further based upon all the other grounds contemplated by the act of Congress in enumerating the conditions upon which letters patent may issue.   The defenses all turn upon findings of fact.   The principles of law are well settled and call for no discussion.   Very little more is therefore required than to formulate a statement of the findings reached.

We have already stated that infringement is not in question. The facts require us to find that it was deliberate. The plaintiff had (whether within the protection of the patent laws or not) a special make of carbureter which was known as the Parkin carbureter. This he made and sold. He had not succeeded in getting any of the automobile manufacturers to adopt it as a feature of their make of cars. Purchasers, however, at times required it to be put on the cars they had bought. It had been put on a car of the defendant in the effort to meet the complaints of a dissatisfied purchaser, who was disappointed with a car sold him. There is reason to believe the carbureter was shown to be a success, for after that the defendant put it on all its make of cars for two seasons. The evidence is silent as to what make of carbureter it has since sold with its cars, but shows a continued use of that of the plaintiff, whenever a purchaser required it or a car could thereby be sold. This conduct was a deliberate and willful trespass upon plaintiff's rights, if he had any, and a denial of such right is the only answer defendant can make to the present complaint.

This same fact, we think, also effectually disposes of one feature of the defense which has been urged upon us. We are asked to find that plaintiff's carbureter is a worthless invention. Defendant itself, however, has raised up three insuperable difficulties in the way of reaching this conclusion. It appealed to and secured from plaintiff use of his carbureter, and exchanged it for the one on defendant's car which had proven unsatisfactory. After thus acquainting itself with plaintiff's carbureter, it used it as its own for two years. Ever since this first use it has installed the carbureter on its own cars in preference to its own make whenever purchasers so desired. This, if not positive evidence of merit in the invention, renders a denial of utility doubly hard to make good. We content ourselves with the observation that the grant of letters patent is prima facie evidence of this as of other conditions of validity, and that there is nothing in evidence in this cause to overcome this presumptive finding of utility.

If the claims in issue were not (as each one is) for a combination, more weight would attach to the defense of prior patents and publications. The very large number of such patents and publications set up in the answer was reduced at the trial to three patents and one publication. Of these one patent (and the only one in which the claimed invention related to the same subject) is admittedly not a prior patent at all. The other two and the publication obviously have no relation to a defense, except in so far as they may evidence lack of novelty in those elements of the plaintiff's invention which are common to all. Such fact, however (even if it be the fact), would not detract from the merit or the invention displayed in combining these known elements in a new and wholly different structure. Here again the finding must favor the plaintiff, for it is clear that the prior art, as disclosed by these patents and this publication, does not show the plaintiff to have been anticipated in the novel combination which he had patented.

[2] This brings us to the denial of inventive novelty involved in the averments of prior use. The question is thus stated because the stat-

utes affording protection to inventors leave room for this distinction. The prior grant of letters patent, publication, public use, or sale mentioned in the statutes may conclusively show the applicant for a patent not to have been the first inventor, but they also each ipso facto forbid the grant of letters. Lack of inventive novelty (as of utility), in that the invented improvement was before known to or used by others, will have the same consequence. To render invalid letters already granted on this latter ground calls, however, for clear and convincing proofs. It is perhaps as common as any other one thing in life, when a great discovery is made known and the fame it will confer upon its discoverer is appreciated, that rival claimants to the honor spring up on all sides. The histories of science and literature abound in illustrations of the truth of this observation. So it is when a perfected invention has been patented and its commercial value is realized. No dishonesty can be fairly imputed to another, long engaged upon the same problem, who lays claim to the invention. The partition which separates the perfected invention from the one still being groped for is often so slight that after the event it disappears altogether.

There are two, and we think three, facts to be found from the evidence in this case. One is that a number of persons were independently working upon the problem which the plaintiff claims to have first solved. Another is that the ideas, including possibly this idea of springs independently adjustable, which occurred to the makers of automobiles, were put into form and tried out, not only by the inventors themselves, but subjected to trial by the general public. If they stood the test and were found worthy of adoption, they were adopted into practical commercial use. If they failed, they were given up, and the genius of the inventor was directed into other paths. The third is that those who had, contemporaneously with the plaintiff, or perhaps before him, been working along the same line of inventive thought, for some reason failed to win success and gave up the attempt. These fruitless and abandoned efforts do not stand in the way of the assertion of plaintiff's claim to the due reward for what he did.

Our conclusion is that plaintiff invented the improvement he claims, and that it had not been in public use, nor are we able to find that as a perfected invention it was before known to or used by others. Had the Huff invention been of the same combination of elements as that of plaintiff, its precedence in time would have appeared, because the time of plaintiff's inventing was not clearly shown to antedate the filing date. It is, however, for a different construction.

The final stand of the defense on the ground that what the plaintiff accomplished flowed solely from the application of the ordinary skill of the mechanic, and that mere adjustability is not the display of patentable invention, overlooks the fact that the claim here is for a novel combination. This involves more than mechanical skill. That it is a true combination, if novel, we think to be clear, and its novelty we have already found.

A decree in favor of the plaintiff, incorporating the usual features following the findings made, may be submitted.